**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| QURAN MCLENDON, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | NO.  26-2250 |
| | : | |
| CITY OF PHILADELPHIA, *et al.*, | : | |
| Defendants. | : | |

**MEMORANDUM**

**MURPHY, J.**                                                                                 **June 24, 2026**

Plaintiff Quran McLendon filed this *pro se* civil rights action pursuant to 42 U.S.C. §

1983 based on events that occurred while he was incarcerated as a pretrial detainee at the Curran-

Fromhold Correctional Facility ("CFCF").  For the following reasons, the court will grant Mr.

McLendon leave to proceed *in forma pauperis*.  On statutory screening pursuant to 28 U.S.C. §

1915(e)(2)(B), the court determines that one claim is plausible and can be served, but all other

claims must be dismissed.

## I.       FACTUAL ALLEGATIONS[1]

In the complaint, Mr. McLendon names defendants City of Philadelphia and Correction

Officers R. Gibson, R. Young, and John Does 1-6.  DI 2 at 2-3.  He asserts that "during a

shakedown" on November 13, 2025, he was ordered out of his cell by Correction Officer Gibson

"so that it could be searched."  *Id*. at 5.  At this time, he "was going over [his] legal papers and

attempted to get them all together to protect them during the cell search when Correction Officer

---

[1] Mr. McLendon used the form civil rights complaint available to unrepresented litigants to file his complaint.  DI 2.  The court deems the entire submission to constitute the complaint and adopts the sequential pagination assigned by the CM/ECF docketing system.  The factual allegations set forth in this memorandum are taken from complaint.

Gibson started to rush" and argue with him.  *Id*.  He "was handcuffed and moved to the gym while [his] cell was searched."  *Id*.  When he returned to his cell, he alleges "CO Gibson struck [him] from behind using unjustifiable and unreasonable force."  *Id*.  He claims Correction Officer Young and John Does 1-6 entered his cell "using said force causing injuries to [his] mouth, ear, head, and neck, which [he] was improperly treated for" and did not receive medical attention.[2]  *Id*.  He alleges he filed a grievance based on this incident but did not receive a response from CFCF.  *Id*. at 6-7.

As a result of these events, he has constant headaches, a joint dislocation in his left ear, and his left front tooth dislocated from the root and "became infected and has to be removed."  *Id*. at 5.  He brings claims for cruel and unusual punishment and violations of the Equal Protection Clause and his due process rights under the Fourteenth Amendment.  *Id*. at 3.  He requests money damages and a physical examination for his injuries.  *Id*. at 5.

## II.    STANDARD OF REVIEW

The court grants Mr. McLendon leave to proceed *in forma pauperis*.[3]  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the court to dismiss the complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see*

---

[2] It does not appear Mr. McLendon intended to bring constitutional claims in this case for the failure to provide medical treatment as he does not name a medical provider as a defendant or allege he requested treatment that an official refused, delayed or prevented him from receiving. Thus, the court understands the passing reference to not receiving medical treatment to be background information to his excessive force allegations, rather than an independent claim for deliberate indifference to his medical needs.  In any event, since he does not develop this allegation or allege who did not provide treatment, any such claim would not be plausible.

[3] Because Mr. McLendon is a prisoner, he must still pay the $350 filing fee for this case in installments as required by the Prison Litigation Reform Act.

*Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the court to determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 560 U.S. 544, 556 (2007)).  At this early stage of the litigation, the court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim.  *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197, 204 (3d Cir. 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

Because Mr. McLendon is proceeding *pro se*, the court construes his allegations liberally. *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).  The court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.*  However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F.3d at 245).  An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Mala*, 704 F.3d at 245; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) (*per curiam*) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it be name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

## III.   DISCUSSION

Mr. McLendon asserts his constitutional claims pursuant to 42 U.S.C. § 1983, the vehicle by which federal constitutional claims may be brought in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998); *see also Jutrowski v. Township of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct." (quoting *Iqbal*, 556 U.S. at 677)); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).

### A.   Fourteenth Amendment Claims

Mr. McLendon asserts claims for cruel and unusual punishment and due process violations based on his allegations of excessive force.[4]  Excessive force claims brought by

---

[4] Mr. McLendon also mentions an equal protection violation under the Fourteenth Amendment but fails to allege a separate plausible claim. To plead an equal protection violation plausibly, a prisoner must allege "that he was treated differently than other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a protected class." *Mack v. Warden Loretto FCI*, 839 F.3d 286 (3d Cir. 2016) (citing *Hassan v. City of New York*, 804 F.3d 277, 294, 298 (3d Cir. 2015)). It is also possible he intended to assert a claim based on a "class of one" theory, in which he must allege he was intentionally treated differently from others similarly situated inmates and that there was no rational basis for the treatment. *See Phillips v. County of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008) (to state an equal protection claim on a "class of one" theory, "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so

convicted prisoners are analyzed under the Eighth Amendment's Cruel and Unusual Punishment Clause, while claims brought by pretrial detainees are analyzed under the Fourteenth Amendment's Due Process Clause.[5] *See Kingsley v. Hendrickson*, 576 U.S. 389, 400-01 (2015); *see also Jacobs v. Cumberland County*, 8 F.4th 187, 193-94 (3d Cir. 2021). Because Mr. McLendon was a pretrial detainee at CFCF, his excessive force claims will be analyzed under the Fourteenth Amendment. To state a due process violation based on excessive force, he must allege plausibly that "that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 576 at 396-97. The following circumstances "may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* at 397. Whether unreasonable force has been used against a detainee "requires 'careful

---

intentionally, and (3) there was no rational basis for the difference in treatment"); *see also, generally, Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) ("Persons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'"). Regardless, he does not allege any facts to support either theory. He does not allege that he is a member of a protected class or explain how he was discriminated against based on that membership nor does he allege who treated him differently from whom. If he chooses to file an amended complaint and wishes to bring a claim for an equal protection violation, he should be mindful of these elements.

[5] The distinction is significant because the "language of the two Clauses differs, and the nature of the claims often differs." *Kingsley*, 576 U.S. at 400. When a convicted prisoner brings an Eighth Amendment excessive force claim against a prison official, the court must consider "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillan*, 503 U.S. 1, 7 (1992). The malicious-and-sadistic standard for an Eighth Amendment claim is subjective, but an objective standard is applied to a Fourteenth Amendment claim. *See Kingsley*, 576 U.S. at 400 (explaining that the reason for the lesser standard in a Fourteenth Amendment claim is that "pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically'").

attention to the facts and circumstances of each particular case.'" *Jacobs*, 8 F.4th at 194 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  Courts should analyze "these circumstances 'from the perspective of a reasonable officer on the scene'" while keeping in mind that decisions about safety and order require the expertise of correctional officers, "'who must have substantial discretion to devise reasonable solutions to the problems they face.'" *Id.* at 195 (quoting *Kingsley*, 576 U.S. at 397 & 399).

The use of force Mr. McLendon alleges against Correction Officer Gibson states a plausible claim.  He alleges when returning to his cell after it was searched, Correction Officer Gibson "struck [him] from behind using unjustifiable and unreasonable force," which resulted in significant injuries.  DI 2 at 5.  While he continues that Correction Officer Young and John Does 1-6 entered his cell "using said force" causing injuries, *id.*, these allegations do not rise to the same level since Mr. McLendon does not explain the amount or extent of the force Correction Officer Young and John Does 1-6 used, the need or lack thereof for such force, whether he was actively resisting, if he was still handcuffed, or allege any facts explaining the circumstances of why or how those defendants were involved after Correction Officer Gibson allegedly struck him from behind.  Merely asserting that they used "said force" is undeveloped and insufficient to allege a plausible claim.  He also does not differentiate actions taken by each of these defendants. Accordingly, the excessive force claims will be dismissed against all defendants other than Correction Officer Gibson.  However, the court will give Mr. McLendon an opportunity to amend his claims against Correction Officer Young and John Does 1-6 if he is able to allege additional facts to cure the defects the court has identified.

### B.    City of Philadelphia

Mr. McLendon's claims against the City of Philadelphia cannot proceed as pled.  Local governments can be liable as "persons" under § 1983, however, this liability extends only to "their *own* illegal acts."  *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)); *see Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 665-83 (1978).  This limitation is based on the well-established principle that municipalities "are not vicariously liable under § 1983 for their employees' actions."  *Connick*, 563 U.S. at 60; *see also Monell*, 436 U.S. at 691 ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor — or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.").  Rather, to state a claim for municipal liability, a plaintiff must allege that the City's policies or customs caused the alleged constitutional violation.[6]  *See Monell,* 436 U.S. at 694; *see also Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003).  Mr. McLendon "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard.  *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009).  "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries."  *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)).  This can be done "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged.  *Id.*

---

[6] A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected."  *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019).  "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights."  *Id.*

7

Mr. McLendon not only fails to identify a specific policy or custom of the City, but also fails to allege that he was injured due to that policy or custom, both of which are fatal to his claim. In fact, other than including the City in the heading of his complaint, Mr. McLendon does not mention the City at all and fails to allege any factual allegations against it. Instead, Mr. McLendon's claims focus on the alleged actions of its employees. Because there is no *respondeat superior* for municipal liability under § 1983, and Mr. McLendon failed to identify a policy or custom of the City that caused his injury, his claims against the City are not plausible as pled and will be dismissed without prejudice. The court will permit Mr. McLendon an opportunity to amend these claims as well.

## IV.    CONCLUSION

For the foregoing reasons, the court will grant Mr. McLendon leave to proceed *in forma pauperis* and dismiss his equal protection claims, excessive force claims against Correction Officer Young and John Does 1-6, and the claims against the City without prejudice.[7] The court is prepared to direct service of the excessive force claim against Correction Officer Gibson, so

---

[7] As previously noted, it does not appear Mr. McLendon intended to bring constitutional claims for the failure to provide medical treatment. To the extend he did intend to bring such a claim, if he files an amended complaint, he should be mindful of the elements of the claims he asserts. To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

that Mr. McLendon can proceed on his claim against him.  However, the court will first give Mr. McLendon an opportunity to file an amended complaint in the event he seeks to amend the dismissed claims, and he is capable of curing the defects the court has identified in these claims by asserting additional facts.  Mr. McLendon is reminded that if he files an amended complaint and intends to proceed on the excessive force claim that the court has not dismissed, namely against Correction Officer Gibson, he must replead that claim, including all facts related to the claim.  If he chooses not to file an amended complaint, the court will direct service only on the excessive force claim against Correction Officer Gibson.

An appropriate order follows, which provides further information about options for proceeding in this case.